August 26, 2018 Robert Kraus, Assistant Federal Public Defender of the United States of America, and I represent the Atomic Storage Law Group. I'd like to reserve a few minutes. Okay. Mr. Kraus, let me just say, we have not conferenced this case. Let me just share with you my concern here, and you can either tell me why. You can tell me why I'm right, and Mr. Broad, I'm sure, will be happy to tell me why I'm wrong and what I'm missing. But we sometimes see sentencing transcripts where the judge does little more than parrot 3553A, and he or she may have given some consideration to the sentence that was imposed, but on the record, it looks like the judge just gave a guideline sentence because it's a guideline sentence, and there's enough fluff to cover the sentence and get past our review for reasonableness. Here, the judge really did go into a lot more detail than we usually see in explaining the sentence. The trouble is, as I go through it, and again, this is only speaking for myself, there's a lifetime supervised release, not the only issue before us. I can't tell which of the factors the judge is enunciating per sentence go to the incarceration and which ones go to the length of the supervised release. That's our problem with it. But then the flip side of that is, why shouldn't it matter? Because it struck me as I read what the judge was explaining, each of those considerations could justify a lengthy term of supervised release, perhaps even a lifetime term of supervised release. We've got the policy statement and the guidelines which recommend a lifetime supervised release in cases like this. So why shouldn't we simply say, Mr. Carras, nice try, nice brief, but go away? Well, I have a few responses to that, Connie. First of all, I think you're right that the record certainly isn't clear. Most of what the judge said here certainly was not specifically attached to the lifetime supervised release term. And I think one of the reasons why you might consider that it's been intended to be and why it shouldn't be applied was the fact that he, after going through the factors that he did go through, and going through the records he went through in the 3553A factors, he then ended up by saying that, and I'm quoting from him, that this sentence, sentence in general, was reasonable and not greater than necessary to achieve sentencing objectives. And although I think Your Honor may be right that you can't challenge that with respect to the prison term, nothing in the record shows that he was attaching this, and particularly the parsimony provision aspect of that, the lifetime of release, particularly when he gave a bottom of the guideline range sentence and felt that that was reasonable, and yet went ahead and gave him a lifetime supervised release term. I think that's incongruous, and I think without any further explanation, that's contrary to some of the decisions of this court in Freeman and Your Honor's decision in Volcker, where you really take some of the district judge's hat and making sure that they do provide some sort of time. There was a quote in Volcker stating that the district court has to demonstrate great care, and I'm quoting here now from Volcker, in ensuring the proper nexus between sentence, offense, and offender. And I don't think that was really done here with respect to the term of supervised release. Mr. Cross, is there anything to be made of the finding of Congress that offenders such as your client, those convicted of a sexual offense, tend to be recidivists? And that finding was the impetus of 5D12B, which my reading sets a presumptive term of lifetime supervision. Well, I would question the basis of that finding. I'm not sure that that was one of the findings that the Sentence Commission was making as a result of empirical... You might question the basis of the finding, but it is a guideline policy statement. It is a policy statement that you can go up to life. But I think this court has made pretty clear that it's going to look carefully at a lifetime term of supervised release, and will not just rubber stamp it. And I think I mentioned somewhat in my brief, I think I was actually a little bit thinner than I should have been. No, we like thin briefs. That's not a problem. No problem whatsoever. Sometimes it's good. But I think I could have expanded more on the point of the district court's need to avoid unwarranted disparity. But the truth is that you have two different cases. You really find it problematic to two different judges. In the other case that you mentioned, it's an NPO, but consider it as a hypothetical. And in this case, you're looking at two different set of facts, two different offenders, and arrive at two different conclusions. Well, that's true. Isn't it basically individualized sentencing? That's true to some degree. But I think you can look at some of the salient facts and see how they fall and how the judges make decisions. In here, we had a situation where Coopler, his crime was sending away for videotapes. When his home was searched, they found on his computer somewhere between two and five images of child pornography out of 580 total pornographic images, suggesting that his And even so, there was forensic evidence that he was not even looking at those images for the 16 months prior to his arrest. So this isn't a man who's out there constantly looking at child pornography. Plus, there was no evidence here that Coopler ever touched any child, that he had access to children, that he was communicating with anyone on the internet, that he had joined one of those child porn chat rooms, that he had joined any sort of internet groups and was sharing things. He was pretty much a loner who happened to have a problem looking at pornography and that edged over into child pornography. But I think in contrast to some of the other cases that we've seen in this court, for example, in... Well, can we go back a moment? Yes. I mean, here, the district judge also took into account that Coopler had been looking at child pornography for a period of 10 years, that he had a substance abuse problem that he confessed was incurable. I mean, weren't those significant factors in the court's... Well, the substance abuse, if you go back and look at the TSR, he had been arrested a few times for drug driving and minor drug arrest. Most of those were close to 20 years old. And yes, he did have a 10-year history of looking at child pornography. But again, we had the forensic evidence saying that he hadn't looked at his computer images for the past 16 months. And the fact that he'd been looking at it for 10 years really, I think, is fairly minimal compared to some of the other cases that this court had seen. I mentioned a few. United States v. Loy. There, the defendant went to a mall and affirmatively made these upskirt videos of young girls' underpants as they were going up the escalator in a mall. He hadn't supervised police term in three years. In U.S. v. Freeman, the defendant downloaded numerous images of child porn, admitted that he had molested numerous young boys, said that he thought it was okay to have sex with Were those sentences imposed before the policy statement or after the policy statement? The date, I can't be sure, Your Honor. It might make a difference, though, wouldn't it? Those may be cases before the commission came with this policy statement about the length of supervised release. Perhaps, Your Honor, but I'll refer to some other cases. In United States v. Volcker, that Your Honor wrote the opinion in, there the defendant exposed his three-year-old daughter's buttocks over the Internet. He made statements that he had sexual contact with minors. I do see, Mr. Kressler, I understand those cases. I do see one problem here, and it's based on the district judge's finding that your client had an addictive personality and that this was not one or two simple incidents, but rather over a 10-year period. That was of great concern, it seemed to me, to the district judge in imposing this lifetime supervision. Yes. Well, I think there's also a problem with that finding, Your Honor, and that was something that was mentioned in the Freeman case. He even said he tried therapy, but it didn't work, and that was your client's. No. Is that right? I don't believe so, Your Honor. But he just wanted help. I mean, the judge said that your client was unable to get a control over the situation himself. He wanted help. Yes. Well, if you put that in that context, why couldn't we include that the judge's sentence of a lifetime supervised release actually did your defendant a favor in the sense of furthering his therapeutic motivations? Another aspect of that, though, Your Honor, would be perhaps to give him supervised release of a lesser amount contingent on his getting treatment and being successful in it. But he could get that. I mean, there's nothing that would prevent Kukler from going back to the judge and saying, look what I have done. I've gotten treatment. I'm much better now. Let's make a motion to amend the supervised release aspect of the sentence. He could always do that, couldn't he? He could, but I think it's not a good burden to do that on the defendant, whereas you could give him a seven-year supervised release requirement to do the treatment, and then if it's not working, the government could come back and ask for... Well, from the government's perspective, then you're putting in the same burden which you defined as undue on them. Well, I think that's only fair given the resources of the United States government, Your Honor. I'm not sure that fairness is necessarily always a great argument, but I think in this case, given the deprivation of liberty that would accrue to the defendant here, I think it's fair to say that there's a lot of components on the government. One further point I wanted to mention was that in terms of the district court judge's conclusion that he had an addictive personality, it was based solely on the findings in the PSR, and in the Volcker case, where the court was concerned that the district court not make judgments in psychologically sensitive areas based on conclusions by the probation officers and that they need to be looking at conclusions by people with more expertise such as counselors or treatment therapists. In terms of the standard of review, are we looking at this for reasonableness or abuse of discretion? Well, there seems to be a little bit of a...  They seem to talk about both, but I think ultimately supervised release term is part of a sentence, and sentences under Volcker and its progeny are to be reviewed for reasonableness, so I think ultimately it is a reasonableness standard. Where specifically do you say the district court erred or made a mistake? What was the problem in his sentence? What do you think it should be and why? I think it was twofold. First, I think the district court did not make specific findings tied to the specific term of the supervised release term, and his remarks seem to be only tied to the incarceration term. And I think the second mistake was that I think the record here just does not support a lifetime supervised release term. How old is your client? He is 20 years old. Go ahead, go ahead, Joe. I'm sorry. I recall somewhere in the briefs, and I don't know who said it, but the inference was that it was a practice in this district to give lifetime supervised release sentences in pornography cases. Am I correct? I read that somewhere too. I believe that was counsel during argument in the sentencing hearing made that remark and then went on to object to the court's imposition of the life term. I think that's about appendix 55 or so. That's part of his objection to the sentence you made, defense counsel. I'm sorry, that would be closer to 70. I remember reading that too. Let me ask this. There's a lot of discussion by the court in terms of his experience that these kinds of offenders pose a high risk of recidivism. I think he said, and I thought I had it in my notes. I don't see it now, but I remember reading something to the effect of him saying that in his experience, these defendants almost never got better. I'm wondering where that experience came from. It seemed to me like one of those conclusions based upon assumptions that are not rooted in anything close to social science. We will only see the people that didn't get better. The ones that get better are not going to come back before a court. I wonder what basis is there for that kind of a conclusion. He may be absolutely right, but I remember reading a while ago when I was working with the State Sentencing Commission some social science studies that I was absolutely flabbergasted it's not too strong of a word to find that the social science studies suggested that our general belief about the chances of recidivism here are really not based upon research. Now I could be wrong about that and the studies are old and they may be aberrant studies, but I'm not sure that the social science that you referred to bears out the conclusion that most of us have that these offenders are very, very high risk for recidivism. It may, I just don't know if it does. And if I may just add to that, to the extent that Mr. Kukla here would be a recidivist, it's not as if he's a predator of any sort or is affirmatively making any sort of child pornography. All he's doing basically is sitting at home. So I think given all that... Yeah, but as we said in some of our cases that seemingly innocuous activity adds to a market demand, the end result of which is victimizing kids because it drives a demand that is satisfied by bringing kids in, exposing them in this way and scarring them for life, if not worse. I understand that, Your Honor, just in terms of his relative actions and whether or not that's worthy of a lifetime. Okay, thank you. Mr. Zubrodny. Okay, I believe the court. My name is Gordon Zubrodny and I'm an assistant United States Attorney for the Middle District of Pennsylvania. The issue before this court is whether the district court acted in a reasonable fashion in sentencing Mr. Kukla, a lifetime supervisory release. Put another way, the question is did the court comply with this court's holding in Volker and Cooper and Smith and a host of others by giving meaningful consideration to the 35-53 factors and by applying them in a reasonable way. Can we say the court was reasonable when it did not link the length of its sentence, a lifetime supervision to its concern about the public and recidivism?  Where an individual can't control, and the court went into a great deal of trouble trying to establish a history of excessive, compulsive behavior in a number of areas. You may recall that this individual was involved in addiction to crack. He was presently involved in addictions to marijuana at the time that he was arrested. He was an alcoholic, had a four DUI arrest. He had attacked a police officer. And the judge says, look, you are an impulsive, compulsive individual. You're involved in addictions. And the addiction just jumps from addiction to addiction. But the core addiction is child pornography because that has run through the last decade of this woman's life. But Mr. Kukla made a very good point. The evidence here is that there were images on his computer that he hadn't looked at in 16 months, unless he didn't know they were there. And I don't think anybody, even Mr. Krause, is suggesting he didn't know they were there because they didn't just magically jump onto his hard drive. That's inconsistent with your compulsive argument, isn't it? No, it isn't, Your Honor, because if you recall, the judge noticed in the probation report, the PSI noticed that this defendant's activity was hidden in the sense that during this entire period, he was making voluminous purchases of child pornography using his credit card. We're able to establish that. What he was doing was he was not downloading it. He was viewing it and then turning it off so it wouldn't download. The statement about the 16-month viewing, that relates to only the downloaded material. And there was very little downloaded material. He hadn't looked at that in 16 months. But he had been looking as he admitted. He says, I masturbate one to three times per day looking at the child pornography. I can't stop it. And I think I'm addicted. So I think that's a straw argument that has been put up. Is that much different from the other case that Mr. Krause cited, Kosteniuk? Kosteniuk is distinctively different. You recall that in Kosteniuk, first of all, should we look at these disparities? And if we have to look at them, can you distinguish why in one case you have seven years, in another case a lifetime of supervised release? Well, let's compare the two. In Kosteniuk, this is a man, no prior convictions, who was seen looking at pornography on his computer, a workplace computer. When confronted by it, he says, yeah, I think I've got a problem in this area. I'm trying to get help in this area. I keep falling back, but I keep trying to get help. And the court said, look, with no priors, it looks like as near as they could see, it was limited to his workplace computer. He was trying to get help for, the court said, seven years. Now, there's a logical fallacy in the appellant's argument that because seven years was appropriate. In his case, the converse is that more than seven years, our lifetime supervised release is per se unreasonable. I think that's the subtext of the argument. But when you look at Kukler, and you look at the probation report, Kukler is an individual who, although obviously addicted, and knowing he was addicted, sought no help. In addition, he hid his activity so it wouldn't be discovered by law enforcement. But that's going to be an argument. If anybody who doesn't hide their activities, unless someone is a political protester, and you're trying to make a point in deliberately violating the law, what lawbreaker doesn't hide their activity so it's not discovered by law enforcement? Well, I think the question is, is there a distinction between the way this individual went about it and the way the Houstonian defendant went about it? Note that it shows the depth of the district court in Kukler's case, the review of the facts before coming to this conclusion. Well, he did. And my concern, and my only concern, seems to me you could justify on this record a term of lifetime supervised release. My concern is ought we not to require district court judges, when they impose supervised release, to put on the record enough to allow us to be sure that they really considered less drastic means in terms of the duration. It may well be that if the addiction is driving this, it's hard to say what's the cause and effect. One could theorize a situation where a judge might conclude that once the person was able to remain drug-free for two years, or whatever, and establish that by clean urines and whatever, that the supervised release would then terminate upon recommendation of the probation officer. Something like that could certainly be created. And I'm not suggesting that's necessarily required here by any means. But I'm just saying it's very easy to get into this mode where we simply say lifetime supervised release, lifetime supervised release, give lip service to 3553A, which was not done here by any means. But I am concerned that it's very easy for judges to impose a lifetime restriction of liberty without explaining why a lifetime restriction is necessary if something less would not serve the objective of sentencing. Again, Your Honor, I think that the court's reasoning was very clear in this regard. And it is also clear that this whole recidivism argument relates to lifetime supervised release because he said, I've listened very carefully to defense arguments and I accept the argument as to confinement. I don't think confinement as such is necessary. But because of the recidivism issue, supervised release is. And I think that when a person can't control his impulses, and those impulses result in criminal conduct, and that criminal conduct relates to the sexual abuse of children, even though he's preferable in terms of people who are actually doing the killing, lifetime supervised release is presumptively reasonable. And the burden ought to be appropriated to come forward and show that he's no longer involved in this addictive behavior and those impulses are under control. And... Mr. Zubrod, was there a policy in the Middle District to impose lifetime supervision in the case of sexual offenders? Not that I am aware of, Your Honor. I've had lifetime supervised release imposed on individuals, but I've had it not imposed on individuals. Perhaps Mr. Krauss might be better qualified to comment on that, but in my personal experience before the courts, it has not been a policy. And I think that the comment by trial counsel, defense counsel, in that case was really a straw argument, because then she turned around and said, but you have to be different from everybody else. That certainly has not been my experience. To return to your question, Judge McKee, it seems to me that not only is the court should consider the guidance of Congress and the sentencing guidelines, that they should consider lifetime supervisory release and the burden ought to be upon the defendant to show that that doesn't apply, but it seems to me that the defendant has the opportunity to come before the court and to have those conditions removed by any kind of a showing. Cookler was not a pursuit of this in this case in the sense of a prior conviction for the same type of activity. In the sense of a prior conviction for the same child pornography, no, but his admission that he had been heavily involved for the last ten years. I'd also point out the fact that there was more than just a sociological speculation by the court. The pre-sentence investigation in court, there was a psychiatric evaluation done of him. Mr. Cooker was found to have a major depressive disorder. After his arrest, he attempted suicide twice, and he was also found to be drug dependent on illicit drugs. The court said, look, given all of these facts, I believe that lifetime supervisory release is appropriate, but implicit in that and implicit in the law is that that can be reviewed at any time during the course of this committee. If the member has no further observations. I have no further comments. Judge Weiss, anything further? That would be it. Okay, thank you. Thank you. I have no further comments unless you have questions of me. As is always the case whenever he's appeared before me, Mr. Zubrod has made some excellent arguments. Why isn't he right? What's wrong with his argument? Well, I think. I sit here listening to him. He's really a compelling case that he makes. Well, Mr. Zubrod is an excellent attorney, and he has made valid points, but I think in terms of partially going forward with these cases, I think the district court judges need to be apprised that they have to be careful in how they justify. That's true, but we could do that and still affirm the sentence here. We could write an opinion affirming the sentence, but just kind of serving notice that to the extent that there is a policy in any district that it's inappropriate and that reminding judges of their obligation to put on the record enough detailed consideration of less severe alternatives to lifetime supervised release to satisfy a reviewing court that they have considered as 3553A requires on senators that are less severe than lifetime supervised release. But you'd still lose. I would follow up on this case and say, if you would then remand this case for resentencing, permit the judge the opportunity to go back and see if he can justify the supervised release term in this particular sentence. It's a little different. All it has to do is that Mr. Zubrod's statement is justified. I was just thinking of whether we can impose on district judges to come up with some magic term that would somehow justify lifetime supervision when that really is the presumptive term. And it seems to me under the guideline statement. And where the judge says that the defendant has embarked on the same type of activity for a period of 10 years and apparently has been unable to help himself and that there's a need to protect the public and a need to deter, why wouldn't that be sufficient on the part of the district court to justify lifetime supervision? Well, the one element of this that I think should also be emphasized is the need for the district court to narrowly tailor the term to the specific defendant. And I think there may be many cases where life may not be narrowly tailored. Even if it was 10 years, it might be sufficient in some cases. And I think the district court ought to have to justify why 10 years is too little or why 20 years is too little. Or in this case, for a 43-year-old defendant, why maybe 40 years is too little. And why he has to immediately jump the life term. I'm not sure it's actually, although the statute permits the court to go up to life, I'm not sure it's fair to say that that's the presumptive sentence. I think each case needs to be looked at individually and I think that this court can enforce that. I think that will be helpful to everyone. Thank you, Mr. Kress. Thank you. I'm going to take the matter into the president. Thank counsel for a very, very helpful oral argument. Occasionally we'll get a case where one side of the other presents an oral argument, which is very helpful, and as I said, I don't mind saying it, Mr. Zubrod is always in the category. It's a pleasure to see him come in because his arguments are always well thought out. He answers questions, which is kind of a rarity. When both sides are this helpful, it makes our case, our situation in a way, that much more difficult because it puts out for the best arguments of each side. But in a way, it makes it that much easier to do our job right. So I want to thank you both for a very helpful argument. I'll take the matter into advisement.